IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GRETCHEN L. TYREE,

        Plaintiff,

vs.                              Case No. 11-2191-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

        Defendant.

MEMORANDUM AND ORDER

    This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

## I. General legal standards

    The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

2

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

3

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On May 15, 2009, administrative law judge (ALJ) Edward D. Steinman issued his decision (R. at 12-22). Plaintiff alleges that she has been disabled since December 22, 2000 (R. at 12). Plaintiff was insured for disability insurance benefits through December 31, 2006 (R. at 14). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity from December 22, 2000, her application date, through December 31, 2006, her date last insured (R. at 14). At step two, the ALJ

found that plaintiff had the following severe impairments: obesity, pain disorder, depression and anxiety (R. at 14). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 15). After determining plaintiff's RFC (R. at 16-17), the ALJ determined at step four that plaintiff is unable to perform her past relevant work (R. at 20). At step five, the ALJ determined that other jobs exist in significant numbers in the national economy that plaintiff could perform (R. at 21-22). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 22).

**III.  Did the ALJ err in her evaluation of the opinions of Dr. Fielder and Dr. Kenney, plaintiff's treatment providers?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports,

not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.  Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

The court will first examine the weight the ALJ gave to Dr. Fielder, a treating clinical psychologist. In an intake assessment dated May 23, 2006, Dr. Fielder gave plaintiff a GAF score of 60; Dr. Fielder indicated the plaintiff's highest GAF score in the past year was 70 (R. at 279-281).[1]  Dr. Fielder

---

[1]GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders.  The scores in this case represent the following:

> 61-70: **Some mild symptoms** (e.g., depressed mood and mild insomnia) **OR some difficulty in social, occupational, or school functioning**...**but generally functioning pretty well, has some meaningful interpersonal relationships** (emphasis in original).
>
> 51-60: **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational or school functioning** (e.g., few friends,

again saw plaintiff on five occasions, from February 20, 2007 through April 11, 2007 (R. at 775-780).  On March 1, 2007, Dr. Fielder gave plaintiff a GAF of 65 (R. at 780).

The ALJ gave "significant weight" to the opinion of Dr. Fielder on April 23, 2006 that plaintiff had a GAF of 60; the ALJ indicated that this opinion is well-supported by the medical evidence finding that plaintiff had mild to moderate mental impairment symptoms (R. at 18-19).  The ALJ also gave significant weight to a psychological consultation performed by Dr. Anderson, a licensed psychologist, on January 15, 2007 (R. at 19, 514-519). Dr. Anderson found that plaintiff had a current GAF of 55, with the highest GAF in the past year of 60 (R. at 518).  Dr. Anderson also stated that plaintiff gave strong performances on concentration-related mental status examination tasks, and noted that she engages in activities that require sustained concentration.  Dr. Anderson concluded that plaintiff is able to focus adequately upon simple tasks over a 8-hour workday, her memory is adequate for simple, repetitive tasks and she is able

---

conflicts with peers or co-workers).

41-50: **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job) (emphasis in original).

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

to remember a reasonable amount of changes in job tasks (R. at 518). Dr. Anderson found that plaintiff is probably able to interact appropriately with coworkers, supervisors and the public. He concluded by stating that there did not appear to be psychological factors that would prevent her from keeping a regular work schedule (R. at 519).

On November 23, 2007, Dr. Fielder filled out a medical source statement-mental (R. at 831-832). On that form, Dr. Fielder opined that plaintiff had marked limitations in the following 2 areas: 1) the ability to maintain attention and concentration for extended periods, and 2) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances (R. at 831). Dr. Fielder also opined that plaintiff was extremely limited in her ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (R. at 832). At the bottom of the form, Dr. Fielder stated the following:

> **The above opinions are based entirely on information provided by the patient, which has not been independently verified.**

(R. at 832, emphasis added).

The ALJ discounted the opinions expressed by Dr. Fielder on November 23, 2007 for two reasons: 1) the opinion was dated after

the plaintiff's insured status expired (plaintiff's insured status expired on December 31, 2006, 11 months prior to the opinion by Dr. Fielder), and Dr. Fielder did not indicate that the limitations related back to the period on or before December 31, 2006, and 2) Dr. Fielder stated that the opinions expressed on the form dated November 23, 2007 were based entirely on information provided by the plaintiff, which had not been independently verified (R. at 20, 832).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court finds that the ALJ provided a very reasonable basis for discounting the opinions expressed by Dr. Fielder on November 23, 2007. Furthermore, the ALJ reasonably relied on GAF scores from Dr. Fielder and Dr. Anderson, showing that plaintiff had only mild or moderate symptoms. The ALJ could also reasonably rely on the opinion of Dr. Anderson that plaintiff had no psychological factors which

10

would prevent her from working.  Therefore, the court finds no error by the ALJ in the weight he accorded to the opinions of Dr. Fielder.

The court will next examine the weight that the ALJ accorded to the opinions of Dr. Kenney.  Dr. Kenney had initially treated plaintiff in 2002-2003 (R. at 259-271).  After last seeing Dr. Kenney in December 2003, plaintiff again saw Dr. Kenney on February 6, 2007 (R. at 564).

On November 19, 2007, Dr. Kenney filled out a medical source statement-physical, indicating that plaintiff could perform the exertional requirements of sedentary work (R. at 824-825).  He opined that plaintiff could never climb, balance or crawl, and could occasionally stoop, kneel and crouch (R. at 825).  He also opined that plaintiff had various environmental limitations (R. at 825).  By contrast, the ALJ found that plaintiff had the RFC to perform the exertional requirements for light work, but should avoid climbing ladders, ropes and scaffolds, and avoid concentrated exposure to hazards.  Plaintiff was also limited to simple, repetitive tasks with a sit-stand option every 30 minutes, and limited contact with the public, coworkers, and supervisors (R. at 16-17).

The ALJ discounted Dr. Kenney's November 19, 2007 report because the opinion was dated after the plaintiff's insured status expired (plaintiff's insured status expired on December

11

31, 2006, 11 months prior to the opinion by Dr. Kenney) (R. at 20), and Dr. Kenney did not indicate that the limitations related back to the period on or before December 31, 2006. The ALJ also found that the record, including Dr. Kenney's treatment records for the plaintiff did not show that she was as limited as opined by Dr. Kenney (R. at 20).

In making his RFC findings, the ALJ relied on the opinions expressed by Dr. Morse, a medical expert who testified at the hearing, and who opined that plaintiff, from 2000-2006, could meet the exertional requirements of light work (R. at 20, 51). The ALJ also relied on a physical RFC assessment prepared by Dr. Vopat on June 6, 2007, who opined that plaintiff, from 2000-2006, could perform the exertional requirements of light work (R. at 19, 786-793). The ALJ also noted that two other state agency RFC assessments had limited plaintiff to light work (R. at 19, 536-543, 766-773).[2] Finally, the ALJ relied on Dr. Kenney's own medical records for the plaintiff from June 5, 2003, where plaintiff reported that she had opened a delicatessen (R. at 17, 809), and the medical records from December 22, 2003, in which Dr. Kenney wrote the following:

> She has been working 10 hours a day on her feet at her job. She has decided to sell the business as it has been too physically demanding.

---

[2]The court would note that plaintiff did not challenge the ALJ's reliance on any of the state agency assessments.

(R. at 17, 807). Thus, three years after plaintiff alleged that she became disabled, she was working 10 hours a day on her feet, although she indicated the work was too demanding.

As noted above, the court will not reweigh the evidence or substitute its judgment for that of the Commissioner. The court's function is only to determine if the conclusions reached by the ALJ are reasonable and consistent with the evidence. The court finds that the ALJ could reasonably rely on the fact that Dr. Kenney's opinions were rendered 11 months after her insured status had expired, and the fact that Dr. Kenney did not indicate that the limitations he set forth were in effect prior to the expiration of her insured status 11 months earlier. Furthermore, Dr. Kenney did not opine that plaintiff could not work, but limited her to sedentary work. The ALJ gave greater weight to the opinions of Dr. Morris, a medical expert, Dr. Vopat, and two other state agency assessments in limiting plaintiff to light work. The medical source opinions relied on by the ALJ specifically indicated that the opinions related to plaintiff's physical limitations on or before December 31, 2006, when her insured benefits expired. A limitation to light work is also consistent with the 2003 medical record, three years after plaintiff alleged she was disabled, which indicated that plaintiff was working 10 hours a day on her feet.[3] Therefore,

---

[3] Light work requires a good deal of walking and standing. 20 C.F.R. § 404.1567(b).

the court finds no error by the ALJ in the weight he accorded to the opinions of Dr. Kenney.

Plaintiff argues that the ALJ erred by failing to evaluate the opinions of Dr. Fielder and Dr. Kenney in accordance with the factors set forth in 20 C.F.R. § 404.1527[4] (Doc. 11 at 20-21). However, the ALJ is not required to expressly apply each of the six relevant factors in deciding what weight to give a medical opinion. For one thing, not every factor for weighing opinion evidence will apply in every case. If the ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions, nothing more is required, and the ALJ has not violated § 404.1527. Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007). As in Oldham, the ALJ in the case before the court provided good reasons in his decision for the weight he accorded to the opinions of Dr. Fielder and Dr. Kenney. Thus, the ALJ's decision did not violate 20 C.F.R. § 404.1527.

Plaintiff's only objection to the ALJ's RFC findings was that the ALJ did not accord proper weight to the opinions of Dr. Fielder and Dr. Kenney. For the reasons set forth above, the court finds no error by the ALJ in the weight he accorded to the opinions of Dr. Fielder and Dr. Kenney. The ALJ cited to and reasonably relied on other medical evidence in support of his RFC

---

[4] Those factors are set forth in Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003), supra at 7.

findings, as noted above.  Thus, the ALJ did not err when he posed to the vocational expert a hypothetical question based on the ALJ's RFC findings.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 13th day of June, 2012, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge